2024 IL App (2d) 240584-U
No. 2-24-0584
Order filed December 23, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-809 |
| EULALIA VENCES, | ) ) ) | Honorable Julia A. Yetter, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice Kennedy and Justice Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in granting the State's petition for pretrial detention and finding that defendant posed a risk of danger to the victim and the community and that no conditions of release could mitigate the risk of danger.

¶ 2    Defendant, Eulalia Vences, appeals from the trial court's order denying her pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023).  See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of P.A. 101-652); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023).  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On April 30, 2024, defendant was charged with three counts of aggravated battery causing great bodily harm to a child under 13 years (720 ILCS 5/12-3.05(b)(1) (West 2022)) (class X felony); three counts of aggravated domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2022)) (class 2 felony); and three counts of endangering the life or health of a child (720 ILCS 5/12C-5(a)(1) (West 2022)) (class A misdemeanor).

¶ 5      The State filed a verified petition to deny defendant pretrial release. 720 ILCS 5/110-6.1 (West 2022). On May 16, 2024, the trial court conducted a hearing on the State's petition. The State tendered the police synopsis and two photographs of the victim, a seven-year-old boy, A.B., in the hospital. The synopsis indicated that police were called to St. Joseph's Hospital on March 5, 2024, in response to a report of child abuse. Police learned that the victim's mother, Natali Cruz, brought A.B. to the hospital unresponsive and malnourished, weighing 14 pounds. The photos showed A.B. extremely emaciated with little to no muscle, bed sores, and an open wound on his right hip. Hospital staff told police that A.B. was in full cardiac arrest when he arrived. Doctors were able to resuscitate A.B., though he suffered subsequent cardiac arrests before and during transport to Advocate Lutheran General Hospital. A.B. remained in the pediatric intensive care unit at Lutheran General while in the care of the Department of Children and Family Services (DCFS).

¶ 6      A doctor told police that A.B.'s condition of "extreme malnutrition, and *** chronic decompensation due to multisystem organ failure" were "indicative of long-term starvation, isolation, emotional and psychological maltreatment, and deprivation of basic needs." The doctor also stated that A.B. "was isolated, terrorized, neglected, and deprived of basic necessities,

resulting in his current dire medical condition and high risk of death, long-term medical complications, and lifelong psychiatric implications."

¶ 7    Police learned that Cruz was the biological mother of A.B. and a nine-year-old girl, C.B. Defendant was a caretaker for A.B. and C.B. while Cruz was away from home. Defendant lived with Cruz and the children since Cruz's mother passed away more than ten years ago. Cruz claimed that A.B.'s weight was "up and down" and blamed his fast metabolism. Cruz brought A.B. to the hospital because she found him unresponsive in their home.

¶ 8    Police obtained a search warrant for Cruz's home, a two-bedroom apartment in Elgin. One bedroom contained a bed, furniture, and clothing. The other bedroom—A.B.'s room—had a makeshift bed made out of two foam pads covered with a soiled sheet and minimal clothing.

¶ 9    Police also obtained search warrants for Cruz and defendant's cell phones. Cruz's phone had internet searches including: "my child is severely underweight;" "how to gain weight in 3 days;" "weight gain on a 7 year old boy in USA;" and "Wha[t] happens if I take my underweight 7 year old son to an emergency room would I get dcfs sent to my home."

¶ 10   Defendant's phone included text messages to Cruz stating:[1] "When you arrive without shouting give [A.B.] a beating/punch;" "Its nothing, arriving [A.B.] two well placed punches without you yelling;" "Naty I want to leave from here because [A.B.] keeps crying and asking for jelly;" and "[A.B.] can shower this week." Defendant also texted Cruz:

"Well, meanwhile we're in this house don't buy 'uvase' f***ing [A.B.] f***ing boy of shit. Now see what he is given he wants it everytime. The grapes [C.B.] wanted he wanted more, therefore no more food. And don't let [C.B.] see where the cookies come from…and

---

[1] According to the synopsis, the text messages were translated to English from Spanish.

this bastard not even with much pay they'll take care of him and look somewhere he can be yelled at day/fa\*\*\* boy."

Defendant's phone contained Google searches for: "Pomegranate juice to fatten kids;" "Juice/IV drink for a boy to get fat and walk;" "gummies for boys to fatten up;" and "what are good gummies for boys to gain weight?"

¶ 11 The State also proffered that A.B. had never been enrolled in school or seen a pediatrician. Additionally, the State proffered that defendant is residing part of the time in a household where there are children. Defendant told the trial court that she has lived in the United States for over 20 years and was working jobs through temporary agencies. Defendant also told the trial court that, if released, she would live at a home with her cousin at 1213 Cheever Avenue in Elgin. Defendant's appellate counsel, however, states that this address appears to be in Geneva, according to Google Maps.[2]

¶ 12 The State asserted that the proffered evidence was sufficient to show that defendant committed the charged offenses. The State argued that defendant is a risk to A.B., C.B., and to any other children in the community because she was involved in the systemic torture and starvation of a child. The State further argued that no conditions of release could mitigate the risk posed by defendant.

¶ 13 Defendant argued that she was not a continuing threat because she is not the mother of A.B. or C.B., and A.B. is most likely in the care of DCFS. Defendant also argued that this was a "one-off offense," and she would not be finding future employment as a caregiver. Defendant also stated that the "allegations here include negligent maltreatment but certainly not violence, a

---

[2] We may take judicial notice of Google Maps location data. *People v. Clark*, 406 Ill. App. 3d 622, 632-33 (2010).

weapon or a sex offender." She further argues that the trial court imposing maximum conditions of pretrial services, requiring her to maintain gainful employment, requiring her to attend court, and ordering her to not commit any new criminal offenses or have contact with children under 18 would be sufficient to mitigate any threat she posed.

¶ 14 Following argument, the trial court stated that it considered the State's petition and the evidence presented and found that the State provided clear and convincing evidence that defendant committed the charged offenses. The trial court also found that the State proved that defendant posed a real and present threat to specific persons—A.B., C.B., and the child at the proposed residence—as well as any other child she may have access too. The trial court additionally determined that there were no conditions of release that could mitigate the threat posed by defendant. It noted that electric home monitoring (EHM) could only track defendant's location, but not who she was with. EHM thus could not prevent defendant's access to children. The trial court also stated that maximum conditions of pretrial supervision required reporting face-to-face only once every two months, which would not be sufficient to ensure defendant did not have access to children. Thus, the trial court concluded that those conditions of release could not prevent any future harm and detention was the least restrictive condition to ensure the safety of the community. The trial court therefore granted the State's petition.

¶ 15 On August 27, 2024, defendant filed a motion for relief under Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). Defendant argued that the State failed to prove that defendant posed a real and present threat to the safety of the community. Defendant also argued that the State failed to prove that no conditions of release could mitigate any threat to the community. The trial court denied the motion for relief for the same reasons it stated when it granted the State's petition. The trial court also relied on *People v. Romine*, 2024 IL App (4th) 240321, and stated, "Even those

individuals who come before the Court with no criminal history may have been charged with offenses that the underlying facts allege such a departure from the societal norms that it becomes impossible to predict compliance with any pretrial release conditions." Defendant timely appealed.

¶ 16                                    II. ANALYSIS

¶ 17    In Illinois, all persons charged with an offense are eligible for pretrial release. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2022). Pretrial release is governed by article 110 of the Code as amended by the Act. *Id.* § 110-1 *et seq.* Under the Code, as amended by the Act, a defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e).

¶ 18    Upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove, by clear and convincing evidence, that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense (*id.* § 110-6.1(e)(1)), (2) the defendant's pretrial release would pose a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)), and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question ***." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 19    We review the court's decision to deny pretrial release under a bifurcated standard. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. Specifically, we review under the manifest-weight-of-the-evidence standard the court's factual findings as to dangerousness, flight risk, and whether conditions of release could mitigate those risks. *Id.* A finding is against the manifest weight of

the evidence only where it is unreasonable or not based on the evidence presented. *Id.* We review for an abuse of discretion the trial court's ultimate determination regarding pretrial release. *Id.* An abuse of discretion also occurs only when the trial court's determination is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *Id.*

¶ 20 Defendant first argues on appeal that the State failed to prove, by clear and convincing evidence, that she posed a real and present threat to the safety of any person or persons or the community. The Code provides a nonexclusive list of factors that the trial court may consider when making a determination of "dangerousness," *i.e.*, that a defendant poses a real and present threat to any person or the community. 725 ILCS 5/110-6.1(g) (West 2022). Specifically, in making this determination, the court may consider evidence or testimony as to factors that include, but are not limited to: (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code. *Id.* The statute does not list any singular factor as dispositive. *Id.*

¶ 21 Here, defendant argues that this was a "one-off" offense that was the result of "resentment and laziness, endemic to one context" and involved "maltreatment, but certainly not violence." Thus, she argues, she is not a real threat to anyone because her offense is based on an alleged

failure to act. However, this characterization is not fully supported by the record. The trial court noted that the evidence showed long-term mistreatment of a defenseless child, including willful neglect and physical and psychological harm at the hands of defendant. It specifically stated, "defendant stands accused of starving, *torturing*, and imprisoning a child, with evidence to suggest that defendant *hit and punched* the victim." (Emphasis added). The record further reflects that A.B.'s condition at the hospital was consistent with being "terrorized." The photos show that A.B. was not only extraordinarily emaciated but had an open wound on his hip. Further, the text messages from defendant suggest a pattern of physical abuse. Thus, based on the evidence presented at the hearing, this case does not solely involve the passive neglect of a child, as defendant characterizes it, but the long-term direct physical harm to that child as well.

¶ 22 Defendant also implies that she is only a potential threat to A.B., but not to any other children or individuals. In the trial court, defendant more specifically argued that the presence of C.B. in the home showed that defendant was not a threat to anyone other than A.B. However, under Illinois law, abuse to one child is *prima facie* evidence of abuse to that child's sibling living in the same home. See *In re Edricka C.*, 276 Ill. App. 3d 18, 28 (1995). The text messages presented at the hearing also express frustration toward both A.B. and C.B. Additionally, we observe that in the action to terminate Cruz's parental rights, it was established that "C.B., in turn, endured living in a household where her brother was suffering from torture and starvation, with probable screams of pain, and she displayed some distorted sense of reality regarding his condition." *In re C.B.*, 2024 IL App (2d) 240495-U, ¶ 34.

¶ 23 Moreover, the trial court noted that a child was living at the defendant's proposed residence. Given the evidence of a long-term, systemic pattern of physical abuse and neglect, defendant would pose a threat to this child as well. Thus, the trial court's conclusion that defendant

posed a risk to any person or persons or the community—specifically A.B., C.B., and the child at the proposed home—was not against the manifest weight of the evidence.

¶ 24 Next, defendant argues that the State failed to prove by clear and convincing evidence that no condition or conditions of release could mitigate any risk of threat she posed. Where the trial court finds that the State proved a valid threat to the safety of any person or the community, the court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a)(1)-(6) (West 2022). In reaching its determination, the trial court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the threat the defendant poses to any person or the community. *Id.*

¶ 25 Here, the trial court considered these factors and concluded that no conditions of release could mitigate defendant's threat. The trial court noted the availability of EHM, orders to not have contact with any children under 18, and in-person reporting. However, the trial court concluded that, given the extreme allegations and evidence presented, these conditions of release could not ensure the safety of A.B., C.B., or any other children. The trial court noted that EHM could only show where defendant was located, but not who she was with. It further found that maximum conditions of supervised release only allowed for in-person reporting every two months, which could not adequately ensure that defendant was not living with any children. The trial court again noted that a child is living at defendant's proposed residence. We additionally express concern over the lack of clarity over the location of the proposed residence. Defendant's trial and appellate counsel have given two different cities in which the proposed residence may be located. Our

review of the address on Google Maps shows that it does not exist. The failure to provide an accurate proposed residence during these proceedings does not instill hope that defendant would follow court orders. Therefore, the trial court's conclusion that no conditions of release could mitigate the risk of harm defendant posed was not against the manifest weight of the evidence. Accordingly, the trial court did not abuse its discretion in denying defendant's pretrial release.

¶ 26                                       III. CONCLUSION

¶ 27     For the reasons stated, the judgment of the circuit court of Kane County is affirmed.

¶ 28     Affirmed.