2025 IL App (2d) 250371-U
No. 2-25-0371
Order filed November 19, 2005

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No.  21-CF-1169 |
| | ) | |
| MICHAEL CARWELL, | ) | Honorable |
| | ) | John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE MULLEN delivered the judgment of the court.
Presiding Justice Kennedy and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in granting the State's petition to deny defendant pretrial release and ordering defendant detained.

¶ 2    Defendant, Michael Carwell, appeals from orders of the circuit court of Kane County granting the State's verified petition to deny him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)), as amended by Public Acts 101-652, § 10-255 (eff. Jan. 1, 2023) and 102-1104, § 70 (eff. Jan. 1, 2023) (we will refer to

these public acts collectively as the "Acts").[1] On appeal, defendant argues that the State failed to meet its burden of proving by clear and convincing evidence that: (1) the proof is evident or the presumption great that he committed the charged detainable offenses; (2) he poses a real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case; and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case. We affirm.

¶ 3                                    I. STATEMENT OF FACTS

¶ 4                                           A. Background

¶ 5     On June 28, 2021, defendant was charged by complaint with one count of first degree murder (intend death or great bodily harm) (720 ILCS 5/9-1(a)(1) (West 2020)), a class M felony; one count of first degree murder (probability of death) (720 ILCS 5/9-1(a)(2) (West 2020)), a class M felony; three counts of attempted murder (720 ILCS 5/8-4(a) (West 2020)), a class X felony; and three counts of aggravated battery (with firearm) (720 ILCS 5/12-3.05(e)(1) (West 2020)), a class X felony. Defendant was arrested and brought before the trial court that same day. The trial court set bail in the amount of $3,000,000.

¶ 6     On August 25, 2021, defendant's charges were superseded by indictment. Defendant was charged by indictment with one count of first degree murder (intend death or great bodily harm) (720 ILCS 5/9-1(a)(1) (West 2020)), a class M felony; one count of first degree murder (probability of death) (720 ILCS 5/9-1(a)(2) (West 2020)), a class M felony; three counts of attempted first

---

[1] Public Act 101-652 (eff. Jan. 1, 2023), which amended article 110 of the Code, has been referred to as the "Pretrial Fairness Act" and the "Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act." However, neither title is official. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

degree murder (720 ILCS 5/8-4(a) (West 2020)), a class X felony; three counts of aggravated battery with a firearm (720 ILCS 5/12-3.0(e)(1) (West 2020)), a class X felony; and one count of obstruction of justice (720 ILCS 5/31-4(a)(1) (West 2020)), a class 4 felony. Defendant's bail remained set at $3,000,000. Defendant remained incarcerated, unable to post bond.

¶ 7      On July 24, 2025, the State filed a verified petition to deny defendant pretrial release. In its petition, the State alleged that defendant was charged with detention-eligible offenses and he posed a real and present threat to the safety of any person or persons or the community. See 725 ILCS 5/110-6.1(a)(1.5) (West 2024). Defendant elected to proceed to hearing that day.

¶ 8      The State attached to its petition a sworn synopsis drafted by the arresting agency in this case. The synopsis provides as follows. On June 27, 2021, officers responded to a report of shots fired at Trilogy, a night club in St. Charles. Upon investigation, officers discovered that a person with a gun advanced toward Khalief McCallister and Guadalupe Magana as the two were leaving the night club. The individual then began firing the gun in the direction of McCallister. A different individual then tackled McCallister to the ground and abruptly moved out of the way as the individual with the gun approached and continued firing the gun at McCallister. McCallister died as a result of the shooting. Magana and two other individuals, Lamont Teague and Deja Jones, were injured after being struck by bullets. A total of 13 shell casings were recovered from the scene, all of which were 9 mm. The shooting was captured on surveillance camera. An unnamed Aurora Police Department officer recognized the individual with the gun as defendant. The officer, who was unnamed in the synopsis, stated that he had recently stopped defendant on a traffic stop two days before the shooting. Defendant was a documented gang member. Additionally, the synopsis noted that a Trilogy security guard identified defendant from a photo lineup as being present at the club the night of the shooting. When defendant was located and taken into custody,

he was accompanied by his father, who was in possession of a Glock 9 mm barrel that he stated was given to him by defendant.

¶ 9                                    B. Detention Hearing

¶ 10    In arguing that the proof is evident or the presumption great that defendant committed the charged offenses, the State referred the trial court to the police synopsis, noting that there were eyewitnesses to the shooting and surveillance footage that captured the event.

¶ 11    The State next argued that defendant poses a real and present threat to the safety of any person or persons or the community. The State noted that defendant committed the crime with a firearm and was alleged to have shot into a crowd of people outside the night club. As a result, four individuals were struck by the gunfire, one of whom died. The State also asserted that defendant was alleged to have broken down the firearm used in the shooting, arguing that the obstruction charge "relates to the [d]efendant's character."

¶ 12    Finally, the State asserted that no condition or combination of conditions could mitigate the risk of harm posed by defendant's release. Specifically, the State argued that if defendant was released or placed on home monitoring, he would still have access to weapons as there were "no conditions that [the] Court [could] put on the [d]efendant that would prevent him from having access to a firearm."

¶ 13     In response, defense counsel noted that at the time of the shooting, defendant was 20 years old. Prior to the instant offense, defendant had no criminal history and had a valid FOID card. Defense counsel asserted that if defendant was released from custody, he would be able to reside with his father. Further, defendant had an employment opportunity available upon his release. Prior to defendant's arrest, he was employed and helped provide assistance for his grandmother. Defense counsel stated that while in custody, defendant began experiencing some medical issues. He had a

broken bone in his knee that caused him pain and limited his mobility. If defendant did not receive proper physical therapy, the knee injury could cause permanent damage. Finally, defendant presented letters from two individuals in the community who wrote that defendant was not a threat to the community. One letter was written by Natalie Bonner, who stated that defendant volunteered for her community organization.

¶ 14    Defense counsel argued that defendant lacked a criminal history and had good character, as demonstrated by the letters of support and his volunteer work. Defense counsel refuted the State's assertion that defendant tried to dispose of the gun, noting that defendant gave the barrel of the gun to his father, who then turned it in to the police. Further, defense counsel argued that the State's contention that defendant could access weapons if released was meritless, as "certainly anybody out of custody would have access to firearms," but defendant had previously followed the proper channels to obtain a FOID card and legally possess a gun. Defense counsel urged the trial court to consider that in defendant's 20 years of life prior to the instant offenses, he had never been arrested and could follow the rules of any conditions of release.

¶ 15    In response, the State noted that defendant's father was on federal parole at the time defendant was arrested. The State asserted that defendant's father went to defendant's apartment, took pieces of the gun, and had those pieces in his pockets when the police arrived. The police performed a pat down of defendant's father, at which point the barrel of the gun was discovered.

¶ 16    The trial court denied defendant pretrial release. In its oral findings, the court concluded that the State proved by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offenses charged. The trial court emphasized the evidence against defendant, noting that there were eyewitnesses and video evidence. It also noted that "there's some evidence to show that he had access to a weapon suitable for this particular crime."

Accordingly, the trial court found that there were no less restrictive conditions available to mitigate the risk posed by defendant's release.

¶ 17                          C. Motion for Relief and Notice of Appeal

¶ 18     On August 14, 2025, defendant filed a "Motion for Relief Under the Pretrial Fairness Act." See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). In the motion, defense counsel disputed the court's finding that defendant posed a real and present threat to the safety of any person or the community and that there were no conditions available that could mitigate the risk of any threat posed. Specifically, defense counsel noted that defendant had no prior criminal history and there was no reason for the court to conclude that he would not follow court ordered conditions of release.

¶ 19     On August 15, 2025, a hearing was held on defendant's motion for relief. At the hearing, defense counsel argued that the evidence presented at the detention hearing demonstrated that defendant had good character, as he was actively involved in the community, and that he was able to follow the law, as he had no prior arrests and had obtained a FOID card. Defense counsel argued that defendant was not a danger to the community and any potential danger posed by his release would be mitigated by court-ordered conditions of release.

¶ 20     The trial court denied defendant's motion for relief. In doing so, the trial court emphasized the weight of the evidence against defendant and noted that defendant's action of shooting a gun in a public place "could have resulted in a serious injury to many possible people known or unknown to the defendant." It further stated that in "this type of situation, it's the kind of behavior that could cause a danger to the community going forward if the defendant is not incarcerated." The trial court found that EHM (electronic home monitoring) was not a sufficient measure to mitigate the risk posed by defendant's release, as "there are hours at a time statutorily where the

defendant must be released from electronic home monitoring and during that time could obtain weapons and also have access to possible weapons if that would be his inclination."

¶ 21 On August 25, 2025, defendant filed a notice of appeal. See Ill. S. Ct. R. 604(h)(3) (eff. Apr. 15, 2024) (providing that a party may initiate an appeal by filing a notice of appeal in the circuit court at any time prior to conviction). Defendant elected to file a memorandum under Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024). The State filed a response in opposition to the appeal.

¶ 22                                    II. ANALYSIS

¶ 23 Article 110 of the Code, as amended by the Acts, abolished traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2024). In Illinois, all persons charged with an offense are eligible for pretrial release irrespective of the seriousness or the nature of the offense. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2024); *People v. Grayson*, 2024 IL App (4th) 241100-U, ¶ 7. To detain a defendant, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a detainable offense (725 ILCS 5/110-6.1(e)(1) (West 2024)), that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2024)) or a high likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8), (e)(3) (West 2024)), and that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or the risk of the defendant's willful flight (725 ILCS 5/110-6.1(e)(3) (West 2024)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712,

¶ 74. The Code further requires that "[d]ecisions regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention." 725 ILCS 5/110-6.1(f)(7) (West 2022).

¶ 24    In this case, no live testimony was presented. The parties proceeded solely by proffer. Accordingly, our review of the trial court's factual findings and its detention orders is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. Under *de novo* review, a reviewing court "perform[s] the same analysis that the trial [court] would perform using the proper standards." *People v. Ruhl*, 2021 IL App (2d) 200402, ¶ 69.

¶ 25    In his memorandum, defendant first argues that the State failed to prove by clear and convincing evidence that the proof is evident or the presumption great that he committed a detainable offense. In support, defendant argues that "the trial court exclusively relied on the charges and facts as described in an unverified and uncorroborated police synopsis that is at least four years old." Defendant notes that although the police synopsis states that there was surveillance footage of the shooting, the footage was not shown at the detention hearing. Defendant further contends that it is unknown which police officer identified defendant and the reason for the traffic stop two days prior to the shooting is unclear. Finally, defendant argues that the only link between the portion of the gun recovered from defendant's father and the gun used to commit the alleged offenses was that 9 mm shell casings that were recovered from the scene.

¶ 26    The quantum of evidence required to detain a defendant pending trial is less than what is required at trial to prove guilt beyond a reasonable doubt. See 725 ILCS 5/110-6.1(f)(2), (f)(4)-(f)(6) (West 2024); *People v. Santiago*, 2024 IL App (2d) 240499-U, ¶ 28. Here, defendant's concerns go to the weight of the evidence. Section 110-6.1(f)(2) of the Code (725 ILCS 5/110-6.1(f)(2) (West 2024)) expressly permits the parties to a detention hearing to present evidence by

way of proffer based on reliable information, and this court has previously held that a police synopsis alone may be sufficient to sustain the State's burden. See, *e.g.*, *People v. Hill*, 2024 IL App (2d) 240436-U, ¶ 29; *People v. Mancilla*, 2024 IL App (2d) 230505, ¶ 24; *People v. Jones*, 2024 IL App (2d) 230546-U, ¶ 9; *People v. Horne*, 2023 IL App (2d) 230382, ¶ 24.

¶ 27 Here, the proffered synopsis provided evidence that defendant shot and killed one person and injured three others. The proffer states that the shooting was caught on surveillance camera, and there are eyewitnesses available corroborate the facts at trial. Further, a police officer was able to identify defendant from the video. Additionally, the bullets recovered from the scene were the same caliber as the barrel of the gun recovered from defendant's father. Given the record before us, we conclude that the State proved by clear and convincing evidence that that the proof is evident or the presumption great that defendant committed the charged offenses.

¶ 28 Defendant next argues that the trial court erred in finding that he poses a real and present threat to the safety of any person or persons in the community and that there were no less restrictive conditions than detention available to mitigate any threat posed by his release. Section 6.1(e)(2)-(3) of the Act requires a court to find not only that the defendant subject to a detention petition "poses a real and present threat to the safety of any person or persons or the community" but that "no condition or combination of conditions" can mitigate that threat. 725 ILCS 5/110-6.1(e)(2)-(3) (West 2024). Although listed as separate findings in the statute, the two issues are inseparable. "[D]angerousness and conditions of release are two sides of the same coin; the nature and severity of the threat necessarily determine the nature and severity of the conditions that could—or could not—mitigate the threat." *People v. Romine*, 2024 IL App (4th) 240321, ¶ 16.

¶ 29 Under the Code, factors that a court may consider in making a determination of dangerousness, *i.e.*, that a defendant poses a real and present threat to any person or the community,

include, but are not limited to: (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence, involved a weapon, or was a sex offense; (2) the history and characteristics of the defendant, including whether he or she has a prior criminal history indicative of violent, abusive, or assaultive behavior; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to any weapons; (8) whether, at the time of the current offense or any other offense, the defendant was on probation, parole, or any other form of supervised release from custody; and (9) any other factors, including those in section 110-5 of the Code (725 ILCS 5/110-5 (West 2024)), the court deems to have a reasonable bearing on the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior. 725 ILCS 5/110-6.1(g) (West 2024).

¶ 30    Here, the nature and circumstances of the charged offenses include murder, attempted murder, aggravated battery with a firearm, and obstruction of justice. 725 ILCS 5/110-6.1(g)(1) (West 2024). Although defendant does not have a criminal history, the State's proffer establishes access to weapons. 725 ILCS 5/110-6.1(g)(2), (7) (West 2024). Defendant's lack of criminal history does not outweigh the threat posed by defendant, as his actions caused death and serious injury. Defendant not only posed a threat to McCallister, Magana, Teague, and Deja Jones, but also to any other patrons leaving the night club at the time of the shooting. 725 ILCS 5/110-6.1(g)(3) (West 2024). Considering this record, we conclude that the State proved by clear and convincing evidence that defendant posed a real and present threat to the victims and the community at large.

¶ 31　Defendant argues that the trial court "offered no meaningful discussion as to whether a condition or combination of conditions could mitigate any perceived dangerousness" he poses.

¶ 32　In determining which conditions of pretrial release, if any, will ensure the safety of any person or persons or the community, the trial court may consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the real and present threat that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release. 725 ILCS 5/110-5(a)(1)-(5) (West 2024). The history and characteristics of a defendant include his or her "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings" as well as "whether, at the time of the current offense or arrest, [he or she] was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for any offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A)-(B) (West 2024).

¶ 33　Here, the nature and circumstances of the charged offenses included significant violence, with one person being killed and three others seriously injured at a public place. There is significant evidence against defendant, including eyewitnesses, surveillance footage, and pieces of the recovered firearm. Because defendant is alleged to have broken down the firearm used to commit the alleged offenses and attempted to discard the pieces, he poses a serious risk of attempting to obstruct the criminal justice process. While it is true that defendant does not have a prior criminal history, based on the violent and tumultuous nature of the offenses charged, we agree with the trial

court that the conditions of release discussed by the parties, including EHM, would not assure the safety of the community. Contrary to defendant's assertion that the trial court offered no meaningful discussion as to whether conditions could mitigate the risk posed by defendant's release, the court specifically noted that if defendant were placed on EHM or similar conditions, he could still potentially access a weapon and there would necessarily be times that he would be unmonitored.

¶ 34    We acknowledge that, under the Act, all persons are presumed eligible for pretrial release (725 ILCS 5/110-2 (West 2024)) and that "the bare allegations that defendant has committed a violent offense are not sufficient to establish" the conditions prong of the State's burden of proof for detention. *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18. However, the evidence of the charged conduct, "even if it took place on a single occasion," (*People v. Romine*, 2024 IL App (4th) 240321, ¶ 20) may be such that "it becomes difficult to predict defendant's compliance with court orders." *Id.* That is the case here, where the extreme nature of the allegations suggests a poor risk for pretrial release under any conditions.

¶ 35    Hence, we conclude that the State met its burden of proving by clear and convincing evidence that no condition or combination of conditions would mitigate the real and present threat defendant poses to his victims or the community.

¶ 36                                    III. CONCLUSION

¶ 37    For the reasons set forth above, we affirm the judgment of the circuit court of Kane County.

¶ 38    Affirmed.