2024 IL App (4th) 240321

NO. 4-24-0321

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 28, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| RICHARD D. ROMINE, | ) | No. 23CF345 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Ryan M. Cadagin, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court, with opinion.
Justices Steigmann and Lannerd concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant Richard D. Romine appeals the trial court's February 5, 2024, order denying him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (setting the Act's effective date as September 18, 2023). Defendant argues that the court erred in detaining him pending trial for killing his mother, Donna Romine, in April 2023 because the State failed to prove by clear and convincing evidence that he was a danger to the community and that no combination of release conditions could mitigate the danger. Because the court did not abuse its discretion in finding the State had met its burden of proof, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3        The following allegations are taken from the common-law record and the transcript of the February 5, 2024, detention hearing. Transcripts of the earlier proceedings are not included in the record on appeal.

¶ 4        Defendant formerly owned a shooting range in Sangamon County, where he trained more than 200 law enforcement officers on the use of firearms and the requirements of a "concealed carry" permit. Before the events of this case, defendant had no criminal history other than an arrest for a misdemeanor that was never charged. Defendant lived with Donna for almost all his life; she reportedly suffered from bipolar disorder and had early signs of dementia.

¶ 5        According to defendant, Donna had a tendency to lash out, and on this occasion in April 2023, Donna attempted to stab him. She grazed his arm, then attempted to stab him again, at which point he drew a concealed firearm and shot her once in the head. Defendant's friends later said that he and Donna had been feuding because he believed she had stolen money from him. After killing Donna, defendant left the scene.

¶ 6        On April 27, 2023, the police went to Donna's house to check on her welfare after receiving multiple calls from her friends saying that she had not been heard from recently and that defendant might have been involved. It is unclear from the record how much time elapsed between Donna's death and the welfare check. No one answered the door at Donna's house, so the police called defendant, who told them that Donna was alive and well and that they should knock on a particular window to get her attention. After the officers' attempt was unsuccessful, they called him again. He informed them that he could not drive to Donna's house to let them in because he was intoxicated, and he refused to accept assistance to get there. After he hung up, he tried to destroy his phone.

¶ 7 The police looked in the window again and saw what appeared to be a human body on the floor. They entered the house and discovered Donna with a pillow over her head and a single gunshot wound. The police tracked defendant to an address in Springfield and pursued his vehicle with their lights and sirens on, but defendant did not pull over until he reached the driveway of another residence, running at least two red lights in the process. Defendant had a loaded AR-style rifle within reach and was on the phone with an officer he had trained; the officer told him to remove the magazine from the rifle and throw it out the car window, which defendant did. He then tried to ingest a large number of pills, but the officers intervened. After defendant was arrested, he told the police that his mother had likely been killed by someone named "John," who defendant suspected was trying to commit a burglary.

¶ 8 The State charged defendant with first degree murder (720 ILCS 5/9-1(a) (West 2022)), concealment of a homicidal death (*id.* § 9-3.4(a)), aggravated unlawful use of a weapon (*id.* § 24-1.6(a)(1), (3)(A)), and aggravated fleeing and eluding a police officer (625 ILCS 5/11-204.1(a)(4) (West 2022)). The trial court set defendant's bail at $2 million. Defendant could not post the required $200,000 bail deposit, so he filed a motion to reduce his bail, which the court denied. While defendant was detained, the Act took effect and abolished monetary bail in Illinois. See *Rowe*, 2023 IL 129248, ¶ 52.

¶ 9 In February 2024, defendant moved for reconsideration of his pretrial detention under the Code; the State responded by filing a petition to deny him pretrial release on the grounds of dangerousness and willful flight. See 725 ILCS 5/110-6.1(a)(1.5), (8) (West 2022). The trial court proceeded to a hearing on the petition, at which the State and defendant proffered evidence of the above allegations, including photographs of the crime scene that are not contained in the

record on appeal. The court denied defendant pretrial release and entered a written detention order summarizing its findings.

¶ 10    This appeal followed.

¶ 11                        II. ANALYSIS

¶ 12    In ordering a defendant detained on dangerousness grounds, the trial court must find that the State has met its burden of proving three elements by clear and convincing evidence: (1) "the proof is evident or the presumption great that the defendant has committed an offense," (2) "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," and (3) "no condition or combination of conditions *** can mitigate *** the real and present threat to the safety of any person or persons or the community." *Id.* § 110-6.1(e)(1)-(3). We review the trial court's decisions regarding pretrial release for an abuse of discretion. *People v. Morgan*, 2024 IL App (4th) 240103, ¶ 13, *pet. for leave to appeal pending*, No. 130626 (filed Apr. 19, 2024). "An abuse of discretion occurs when the [trial] court's decision is arbitrary, fanciful or unreasonable or where no reasonable person would agree with the position adopted by the [trial] court." (Internal quotation marks omitted.) *Id.*

¶ 13    Defendant briefly addresses the first element in his notice of appeal, stating: "Defendant is asserting the affirmative defense of self-defense. A deadly weapon (knife) was recovered which supports Defendant's affirmative defense. The State cannot prove by clear and convincing evidence that the proof is evident or the presumption great that Defendant committed the offense of first-degree murder." Under Illinois law, the use of deadly force in one's defense is governed by the following standard:

"A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." 720 ILCS 5/7-1(a) (West 2022).

See *id.* § 7-14 ("A defense of justifiable use of force *** is an affirmative defense."). When this affirmative defense is raised by the evidence at trial, the State must prove a lack of justification beyond a reasonable doubt to obtain a conviction. See *id.* § 3-2.

¶ 14        This court has not yet addressed when, if ever, a defendant's assertion of an affirmative defense *before* trial can affect the State's burden of proof on the first element at a detention hearing. However, defendant makes no effort to address the statutory standard in his notice of appeal or supporting memorandum, and that standard requires more than just evidence that another person threatened to use unlawful force. See *People v. Washington*, 2012 IL 110283, ¶ 35 ("[T]o obtain a jury instruction on self-defense, a defendant must establish some evidence of six factors ***."). Rather, defendant focuses on his claim of self-defense as it pertains to the elements of dangerousness and conditions of release, so we will do the same. See *People v. Inman*, 2023 IL App (4th) 230864, ¶ 13 (declining to reach an undeveloped argument raised in a notice of appeal).

¶ 15        Defendant argues that the State failed to establish his dangerousness because, although he shot his mother, "[t]here is no evidence or even a theory that he poses a threat to any other person or the community at large." Defendant then cites *People v. Stock*, 2023 IL App (1st)

231753, ¶ 18, for the proposition that "bare allegations that [the] defendant has committed a violent offense are not sufficient to establish th[e] element" "that no condition or combination of conditions could mitigate the threat posed by [the] defendant" (*id.* ¶ 17 (citing 725 ILCS 5/110-10(b) (West 2022)). In *Stock*, the State relied only upon "a conclusory statement" with "no evidence to support that conclusion" and "at no point referenced or discussed *** conditions or section 110-10(b) of the Code." *Id.* The appellate court concluded that "[i]f the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish this element, then the legislature would have simply deemed those accused of violent offenses ineligible for release." *Id.* ¶ 18. We agree with *Stock* to the extent that it held a bare consideration of the defendant's dangerousness, with absolutely no consideration of possible conditions of release, cannot justify pretrial detention under the Act's three-element framework. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18 ("[T]he fact that a person is charged with a detainable offense is not enough to order detention, nor is it enough that the defendant poses a threat to public safety.").

¶ 16     However, defendant appears to believe that a single violent offense can never justify pretrial detention when "it was not the result of a pattern of abuse or criminal behavior." In making this argument, defendant is subtly attempting to extend the express holding of *Stock*, in which the appellate court found no error in the trial court's consideration of the dangerousness element but reversed based on the trial court's consideration of the third element: conditions of release. See *Stock*, 2023 IL App (1st) 231753, ¶¶ 14-15 ("Defendant's behavior as alleged, at a bare minimum, was dangerous, and such behavior poses a threat to those around him even if he did not intend any harm."). Of course, dangerousness and conditions of release are two sides of the same coin; the nature and severity of the threat necessarily determine the nature and severity

of the conditions that could—or could not—mitigate the threat. Compare 725 ILCS 5/110-6.1(g) (West 2022) (listing considerations for determining dangerousness) with *id.* § 110-5(a) (listing similar considerations for determining conditions of release).

¶ 17　　　　In this sense, defendant's argument has at least some basis in *Stock*, 2023 IL App (1st) 231753, ¶ 18 ("This is not to say that alleged facts stating the basic elements of an offense are not relevant or are not part of the proof that no conditions could mitigate the threat posed by a defendant. But more is required."). Here again, we agree with the proposition that "more is required" only to an extent; an untried indictment or other charging instrument triggers the State's right to file a verified petition to deny pretrial release but has a different purpose altogether; it needs only to present the most bare and conclusory facts necessary to state an offense. The full picture of the underlying events, however, may be relevant to the trial court's detention decision.

¶ 18　　　　For instance, count I of the complaint in the present case charges that "defendant, without lawful justification, and with the intent to kill or do great bodily harm to Donn[a] Romine, personally discharged a firearm, and shot Donna Romine in the head, causing the death of Donna Romine." See 720 ILCS 5/9-1(a)(1) (West 2022). This allegation may provide the information necessary to charge the offense in question, but it does not speak to defendant's future dangerousness or the possibility of conditions of release, nor is it intended to. See 725 ILCS 5/111-3(a) (West 2022) (specifying the formal requirements of a criminal charge). As such, *Stock*'s holding that "more is required" than the allegations in the charging instrument is axiomatic and should not be read to say more than it does. *Stock*, 2023 IL App (1st) 231753, ¶ 18.

¶ 19　　　　However, the trial court does not simply review the charging instrument when determining whether to detain the defendant on dangerousness grounds; indeed, the trial court *must* go beyond these bare allegations to address "the specific articulable facts of the case." 725 ILCS

5/110-6.1(g) (West 2022). In doing so, the court may consider "evidence or testimony concerning *** [t]he nature and circumstances of any offense charged, including whether the offense is a crime of violence" (*id.* § 110-6.1(g)(1)), although the trial court's decision cannot be based *exclusively* on this or any other single factor. See *id.* § 110-6.1(f)(7); *People v. Bond*, 2024 IL App (2d) 230536-U, ¶¶ 13, 18 (reversing a detention order when, "beyond the nature of the offenses themselves, the State presented nothing to show that no set of conditions would mitigate the threat to the victim defendant's release would present"). Nevertheless, the evidence the court uses to determine the nature and circumstances of the offense may also shed light on the other statutory factors governing dangerousness and conditions of release, including those the trial court relied on here: defendant's personal history, statements attributed to him, the age and physical condition of his mother, and his access to firearms. See 725 ILCS 5/110-6.1(g)(1)-(2), (4), (6)-(7); see also *id.* § 110-5(a) (providing that a determination regarding conditions of release shall be made "on the basis of available information"). This same evidence would not be less probative on the question of pretrial detention even if it provided the sole basis for the allegations in the charging instrument.

¶ 20 Ultimately, the evidence of a defendant's charged conduct, even if it took place on a single occasion, may reflect such a departure from the basic expectations of civil society that it becomes difficult to predict the defendant's compliance with court orders—or even societal norms regarding the safety of others—if the defendant is placed on pretrial release. The presumption in favor of pretrial release under the Act does not obligate a trial court to release such a defendant in the hopes that his otherwise spotless record will negate the real and present threat he poses to the safety of the community as shown by the State's evidence.

¶ 21 In the present case, defendant does not dispute that he shot his mother, but he claims that he acted in self-defense because she was approaching him with a knife and had already cut his

arm once. While we agree that his proffered evidence on this point was potentially relevant to his alleged dangerousness, as well as the question of whether that alleged danger could be mitigated by conditions of release, his focus on this evidence is myopic. The evidence of his subsequent conduct, which the trial court properly considered in reaching its decision, paints a different picture and undermines this characterization of defendant's conduct. See *id.* § 110-6.1(g)(1) (providing that the trial court may consider the "nature and circumstances of *any* offense charged" (emphasis added)). The court was not required to accept defendant's contention that he acted in self-defense when the record permitted other conclusions concerning his culpability and, by extension, his potential dangerousness.

¶ 22     It is unclear from the record whether prompt medical intervention might have saved his mother's life, but it is evident that defendant abandoned her body rather than calling the authorities to explain the situation, preserve evidence to support his claim of self-defense, and have his mother properly laid to rest. Even if defendant was uncertain about the right thing to do, he could have called one of his many police contacts to ask, as he later did when he wanted to determine what to do with his loaded rifle. Instead, when the police called him after he left the house, he lied and said that his mother was alive and well, and then he attempted to destroy his phone. Had the officers not investigated further, her death would have gone undiscovered even longer. When police cars pursued defendant with their lights and sirens on, he refused to pull over and ran red lights, and after the police arrested him, he lied again and said that a burglar named "John" had likely killed his mother.

¶ 23     Defendant's actions are not consistent with an innocent mistake or genuine remorse but a concerted refusal to accept responsibility for conduct he knew was wrong. Defendants on pretrial release are expected not just to comply with the terms of their release but to be forthright

about their efforts to comply and to accept responsibility for violations, even if they believe those violations were innocent mistakes. In light of defendant's repeated efforts to escape responsibility for what he only now claims was an act of self-defense, the trial court's conclusion that no conditions of release could avoid the real and present threat defendant posed to the safety of the community was within the bounds of reason.

¶ 24 Because the trial court did not abuse its discretion in ordering defendant detained on dangerousness grounds, we decline to reach defendant's arguments regarding willful flight.

¶ 25 III. CONCLUSION

¶ 26 For the reasons stated, we affirm the trial court's judgment.

¶ 27 Affirmed.

*People v. Romine*, 2024 IL App (4th) 240321

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Sangamon County, No. 23-CF-345; the Hon. Ryan M. Cadagin, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Carolyn R. Klarquist, and Peter Sgro, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |