NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250915-U

NO. 4-25-0915

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 8, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| DAVID L. YARBROUGH, | ) | No. 25CF192 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Steigmann and Zenoff concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed the trial court's order denying defendant pretrial release, finding the State proved by clear and convincing evidence the proof was evident or the presumption great that defendant committed a detainable offense, defendant posed a real and present threat, and there were no less-restrictive means other than pretrial detention to mitigate that threat.

¶ 2     Defendant, David L. Yarbrough, appeals the trial court's order denying his pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Procedure Code) (725 ILCS 5/art. 110 (West 2024)), commonly known as the Pretrial Fairness Act. In accordance with Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024), defendant relies on his motion for relief filed in the trial court as his argument on appeal. In his motion, defendant argues the court erred in determining (1) the proof was evident and the presumption great that he committed the qualifying offenses charged, (2) defendant posed a real and present threat to a person or the community, and (3) there exist no less-restrictive means to avoid the real and

present threat he poses to the safety of persons or the community. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4                        A. Probable Cause and Pretrial Detention Hearings

¶ 5        On July 29, 2025, defendant was charged by information with one count of criminal sexual assault (720 ILCS 5/11-1.20(a)(1) (West 2024)) and one count of domestic battery (*id.* § 12-3.2(a)(1)), resulting from an incident that took place between defendant and his girlfriend at the time, Felicia B. On the same day, the State filed a verified petition to deny defendant pretrial release, alleging he was charged with a sex offense enumerated in article 11 of the Criminal Code of 2012 (720 ILCS 5/art. 11 (West 2024)) and his pretrial release posed an unmitigable real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case. See 725 ILCS 5/110-6.1(a)(5) (West 2024)). A probable cause hearing, as well as a hearing on the motion to detain, were held that day.

¶ 6        The State proffered the following facts in support of the information. On July 12, 2025, defendant and Felicia B. were at a club in Peoria, Illinois, when an argument ensued. Defendant accused Felicia B. of "being flirtatious" with the bartender. The argument continued after the couple left the club and were in Felicia B.'s car traveling back to Pontiac, Illinois, in Livingston County. After searching through Felicia B.'s cell phone, defendant became more upset and threw the phone out the car window. Felicia B. stopped the vehicle to retrieve her phone, and they continued to travel home. While in the car, Felicia B. reported defendant began to "strangle" her, causing her significant pain in her neck and throat. Felicia B. planned to drop defendant off at his house when they arrived in Pontiac, but defendant insisted they go to her home in Flanagan, Illinois. Upon entering her home, defendant began hitting Felicia B. with a broomstick. She screamed in an effort to get her neighbor's attention. Defendant straddled

Felicia B. on the floor, placed a kitchen knife to her mouth, and threatened to cut her. At some point, defendant also used a pillow to cover her face.

¶ 7    Defendant wanted to have sexual intercourse with Felicia B., but she refused. Defendant then forced Felicia B. to perform oral sex. She wanted to stop, which upset defendant. When defendant eventually fell asleep, Felicia B. contacted a friend who lived in Normal, Illinois, for help. Felicia B.'s friend and her friend's boyfriend arrived at Felicia B.'s residence at approximately 8:50 a.m., told defendant to leave the home, and took Felicia B. to Bloomington, Illinois. The friend reported she observed bruises on Felicia B. Felicia B. went to the hospital, where her injuries were documented and a sexual assault kit examination was competed.

¶ 8    The State further proffered defendant was interviewed by Detective Graham Haley with the Livingston County Sheriff's Department. Defendant stated he was not "dating" Felicia B., but they had "casual sex." Defendant admitted to having a verbal argument with her at the club that evening and admitted they had been drinking and "taking pills." Defendant did not remember throwing her phone out the car window. When asked if they had sexual relations that evening, defendant said they had consensual oral sex before going out for the evening.

¶ 9    The trial court found probable cause to support the crimes charged in the information and moved on to the detention hearing.

¶ 10    A pretrial investigation report was filed with the trial court and revealed defendant was 35 years old and lived in Pontiac with his mother. He was unemployed at the time of the report but was scheduled to start a job at a fast-food restaurant and was reliant upon that job to pay child support and otherwise allow him to support himself. Defendant acknowledged a history of substance abuse, though he denied currently using any substances. Defendant had a significant criminal history, including two domestic battery convictions, aggravated unlawful restraint,

possession of a controlled substance, and aggravated criminal sexual abuse of a child (the victim was between the age of 13 and 16 years). Defendant is a registered sex offender. At the time of the offenses alleged in this case, defendant had a charge of electronic harassment pending. Defendant scored 10 out of a possible 14 on the Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R), which placed him at a risk level of 5 on a scale of 1 to 6. Defendant scored at 7+ out of a possible 13 on the Ontario Domestic Assault Risk Assessment (ODARA), indicating a probable recidivism rate of 74%.

¶ 11        The State presented no additional evidence, except a document entitled "[Office of Statewide Pretrial Services (OSPS)] Proffer Outline" detailing the pretrial services offered in Livingston County and what the trial court referred to as, "for lack of a better term, the State's problems with OSPS."

¶ 12        Defense counsel proffered that defendant denied all of the allegations against him and, after reviewing the police report, it did not appear the officers observed any injuries to the victim. Defense counsel added the defendant would comply with all pretrial conditions, including avoiding contact, regular reporting, GPS monitoring, and any other necessary conditions.

¶ 13        Thereafter, the State argued the proof was evident and presumption great that defendant committed the offenses charged, recounting the victim gave a very detailed account of defendant physically attacking her, forcing her to perform oral sex on him, and holding a "knife up to her throat or her mouth." The State argued the violent nature of this crime, with force or the threat of force, and the fact that it involved domestic violence established that defendant posed a threat to the victim. Defendant's history showed he committed "multiple incidences [*sic*] of violent offenses," he is a registered sex offender, and he had a pending case for electronic

harassment at the time of this incident. As further evidence of defendant's dangerousness, the State noted defendant's high risk assessment on both the VPRAI-R and the ODARA. Finally, the State argued there was no condition or combination of conditions to mitigate the threat defendant posed. The State noted that GPS monitoring would not prevent defendant's harassment or communications with the victim in this case. The only way to monitor a no-contact order would be defendant's self-reporting or burdening the victim in this case with reporting any contact made by defendant.

¶ 14    In response, defense counsel argued defendant "vehemently denies this altercation occurred" and there is no corroborating evidence to support the victim's allegations. Defense counsel acknowledged there were reportedly photos of bruising on the victim's arm, but those photos were not provided, and the victim delayed seeking treatment by a day. Defense counsel argued there were conditions that could mitigate any danger defendant posed, including a no-contact order and GPS monitoring. Defense counsel acknowledged there was alcohol use involved and agreed defendant would submit to random testing, as well as a substance abuse evaluation. Defense counsel pointed out that defendant resides with his mother and not the victim. Counsel acknowledged defendant's high score on the VPRAI-R but stated defendant's last domestic violence incident was five years ago and there was no indication that he failed to abide by pretrial conditions, as there were no parole violations indicated.

¶ 15    After hearing argument, the trial court granted the State's motion to deny defendant pretrial release. The court determined the proof was evident and presumption great that defendant committed the qualifying offense in this case, noting the serious facts alleged by the victim that would be corroborated by the two individuals who came to assist her after the incident. The court noted defendant's extensive criminal history, his status as a registered sex

offender, the pending charge of electronic harassment, and his high scores on the risk assessments. The court noted the statutory factors and determined defendant posed a real and present threat to the safety of victim and the community as a whole and that there were no conditions that could mitigate this threat. The court noted defendant was already under certain reporting requirements as a sex offender and stated that further reporting requirements or GPS monitoring would not mitigate the risk he posed, particularly given the seriousness of the offenses alleged in this case.

¶ 16                    B. Preliminary Hearing and Motion for Relief

¶ 17          On August 29, 2025, the case was scheduled for a preliminary hearing, as well as a hearing on defendant's motion for relief pursuant to Rule 604(h)(2).

¶ 18          At the preliminary hearing, the State presented the testimony of Officer Haley. Officer Haley testified he was referred a case from the Normal Police Department, where Felicia B. reported a sexual assault that occurred in Livingston County. His testimony was consistent with the proffer previously presented to the trial court at the probable cause hearing. The only new information presented was that defendant stated his ex-girlfriend was at Felicia B.'s apartment at some point during the evening of the incident, and when Officer Haley contacted her, she confirmed being there but said she did not see any interactions between defendant and Felicia B.

¶ 19          The trial court found probable cause for the alleged offenses. Defendant waived a formal reading of the information, entered a plea of not guilty, and was admonished of his rights.

¶ 20          Thereafter, the trial court heard defendant's motion for relief. Defendant argued the court should reconsider its determination the proof was evident and presumption great that he committed the offenses and that he posed a real and present safety threat. Defendant also argued

there were less restrictive conditions that could mitigate any safety threat he may pose based on the facts of the case.

¶ 21　　　　The trial court noted a different judge had presided over the original detention hearing, but it had reviewed the report of the proceedings, the pretrial report, the State's OSPS proffer outline, and the testimony presented at the preliminary hearing. The court affirmed the denial of pretrial release.

¶ 22　　　　This appeal followed.

¶ 23　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 24　　　　Relying upon his motion for relief filed in the trial court, defendant argues the following on appeal: (1) the State failed to meet its burden of establishing the proof was evident or presumption great that defendant committed the alleged qualifying offenses; (2) the State failed to establish he posed a real and present threat beyond the facts that make the alleged offenses inherently dangerous; and (3) even if the State met its burden of proof as to the detainable offenses and "dangerousness" standard, the court erred in determining there exist no condition or combination of conditions to mitigate any safety threat defendant posed to any person or the community. We note the State erroneously contends defendant is appealing an order for *continued* detention pursuant to section 6.1(i-5) of the Procedure Code (725 ILCS 5/110-6.1(i-5) (West 2024)). However, the record is clear this appeal is based on defendant's initial detention and corresponding motion for relief.

¶ 25　　　　Under the Procedure Code, it is presumed that all criminal defendants are entitled to pretrial release on personal recognizance, subject to certain conditions. *Id.* § 110-2(a). The State may petition to overcome this presumption for a defendant charged with a detainable offense as enumerated in the statute. *Id.* § 110-6.1(a). The Procedure Code provisions applicable

in this case required the State to prove by clear and convincing evidence (1) "the proof is evident or the presumption great that the defendant committed [a detainable offense]", (2) the defendant's release would pose "a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case", and (3) no condition or combination of conditions would mitigate that safety threat. *Id.* §§ 110-2(b), 110-6.1(a)(1), (e)(1)-(3).

¶ 26   Although not raised as an issue on appeal, we must address a matter that informs our consideration of the standard of review. At the hearing on defendant's motion for relief, the trial judge stated she considered the live testimony of the sole witness presented at the preliminary hearing, Officer Haley, which occurred after the initial detention hearing. A hearing under Rule 604(h) should consist only of "an examination of the State's evidence at the initial detention hearing and a determination of whether the State had met its burden of proof." *People v. Williams*, 2024 IL App (1st) 241013, ¶ 29. In this case, the testimony of Officer Haley was virtually the same as the State's proffer as to his alleged testimony at the original detention hearing. As such, even if this error had not been forfeited by defendant, it was harmless because our determination on review would have been the same even without the trial court having considered Officer Haley's live testimony. See *id.* This brings us to the matter of the applicable standard of review.

¶ 27   Ordinarily, when live witness testimony is presented at a pretrial detention hearing, a reviewing court must employ the manifest-weight-of-the-evidence standard. *People v. Morgan*, 2025 IL 130626, ¶ 54. However, "when the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and

evidence otherwise documentary in nature." *Id.* Given the unusual circumstances of this case, we determine the appropriate standard of review is *de novo*; however, our result would be the same under either standard.

¶ 28    A. The Proof Is Evident or Presumption Great Defendant
Committed a Detainable Offense

¶ 29    Defendant first contends the State failed to prove by clear and convincing evidence that the proof was evident or presumption great that he committed the offenses charged in this case. It is undisputed that both charged offenses, criminal sexual assault (720 ILCS 5/11-1.20(a)(1) (West 2024)) and domestic battery (*id.* § 12-3.2(a)(1)), are detainable offenses. See 725 ILCS 5/110-6.1(a)(1.5), (4) (West 2024).

¶ 30    At a pretrial detention hearing, the State is explicitly permitted to present evidence "by way of proffer based upon reliable information." *Id.* § 110-6.1(f)(2); see *id.* § 110-6.1(f)(5) (exempting detention hearings from the rules of evidence). In this case, the proffered information based on Officer Haley's investigation was sufficient to show that the proof was evident or presumption great that defendant committed the offenses charged. During his interview with police, defendant denied dating Felicia B. but admitted they had engaged in "casual sex." Defendant acknowledged going to the club with Felicia B. on the evening of the alleged incident and that he had been drinking and "taking pills." Defendant stated he and Felicia B. had consensual oral sex before going out that evening and otherwise denied the allegations. However, Felicia B. told police that defendant was her boyfriend and they began arguing while at the club because defendant perceived she was being flirtatious with the bartender. She then described to police the altercation that took place on the drive home from the club, where defendant attempted to "strangle" her and threw her phone out the car window. Felicia B. described to police that defendant struck her with a broomstick upon entering her apartment,

pushed her to the floor and straddled her, held a knife to her mouth, and, at one point, held a pillow over her face. Felicia B. told the police she screamed to try to get her neighbor's attention. When she refused defendant's advances to engage in sexual intercourse, defendant forced her to perform oral sex. Once defendant fell asleep, Felicia B. phoned her friend for help. Her friend arrived with her boyfriend and made defendant leave the apartment. The friend reported to police she observed bruises on Felicia B. and took Felicia B. to the hospital, where her injuries were documented and a sexual assault kit examination was completed.

¶ 31    Based on the foregoing, we conclude the State met its burden of proving by clear and convincing evidence that the proof was evident or the presumption great that defendant committed the detainable offenses as charged.

¶ 32                            B. Real and Present Threat

¶ 33    Defendant contends the State failed to establish that he posed a real and present threat beyond the facts which make the offenses charged inherently dangerous. We disagree.

¶ 34    In assessing a defendant's dangerousness, the trial court may consider the nonexclusive list of factors set forth in the Procedure Code, including:

"(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.

(2) The history and characteristics of the defendant including:

(A) Any evidence of the defendant's prior criminal history indicative of violent, abusive, or assaultive behavior, or lack of such behavior. Such evidence may include testimony or documents received in juvenile proceedings, criminal, quasi-criminal, civil commitment, domestic relations, or other proceedings.

- 10 -

(B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release, or other release from custody pending trial, sentencing, appeal, or completion of sentence for an offense under federal or State law.

(9) Any other factors, including those listed in Section 110-5 (*id.* § 110-5) of this Article deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." *Id.* § 110-6.1(g)(1)-(9).

A general threat to society or the mere fact a defendant is charged with a detainable offense is insufficient to support a finding that a defendant poses a real and present threat. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18.

¶ 35    We reject defendant's contention there was "nothing presented as to the

Defendant's background and/or characteristics" to establish he presented a danger. On the contrary, the record reveals the violent nature of the charged crimes, which included the threat of a weapon and the use of a weapon against his former girlfriend. The pretrial investigation report revealed defendant is a registered sex offender with a lengthy criminal history, including prior assault and domestic violence convictions. Further, defendant had a pending charge for electronic harassment. Defendant's high risk assessments on both the VPRAI-R and ODARA are further support for a finding of dangerousness. These specific articulable facts support the conclusion that defendant presents a real and present threat to the victim or the community.

¶ 36          C. Conditions of Release to Mitigate the Safety Threat

¶ 37          Finally, defendant argues even if the State met its burden of proof as to the detainable offenses and dangerousness standard, the trial court erred in determining there existed no condition or combination of conditions to mitigate any safety threat defendant posed to any person or the community. Again, we disagree.

¶ 38          A finding of dangerousness alone does not automatically warrant pretrial detention. See *id.* (finding pretrial detention requires more than a detainable offense and a threat to public safety). "Instead, the trial court must determine, based on the specific facts of the case and the defendant's individual background and characteristics, whether any combination of conditions can mitigate the threat and allow the defendant's release." *Id.* "In each case, a court must conduct an 'individualized' assessment of the propriety of detaining the defendant versus releasing him or her with conditions." *Id.* ¶ 15. Still, "dangerousness and conditions of release are two sides of the same coin; the nature and severity of the threat necessarily determine the nature and severity of the conditions that could—or could not—mitigate the threat." *People v. Romine*, 2024 IL App (4th) 240321, ¶ 16.

¶ 39　　　　We are compelled to address the State's OSPS proffer outline, which was submitted to the trial court as evidence in this case. This document contained a detailed summary of the pretrial service resources available in Livingston County, as well as the duties and limitations of OSPS. While informative in a general sense, this document is merely an overall snapshot of OSPS, rather than evidence relevant to the specific circumstances and facts in this case. "Detention decisions must be individualized, and broad generalizations regarding OSPS's effectiveness are not sufficient to support the denial of pretrial release." *People v. Aviles*, 2025 IL App (4th) 241593-U, ¶ 20; see 725 ILCS 5/110-6.1(f)(7) (West 2024) ("Decisions regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention."); *Atterberry*, 2023 IL App (4th) 231028, ¶ 18 ("[A] court should not rule out pretrial release for a defendant based on a general perception that conditions of release are loosely monitored."). This document, standing alone, is insufficient to justify detention, and it bears repeating that such decisions must be made based on the specific articulable facts of the case.

¶ 40　　　　We reiterate the record in this case reveals defendant has an extensive criminal history involving numerous violent crimes, which demonstrates his repeated disregard for the rule of law and his victims. He is a registered sex offender who is, once again, charged with a sex offense, this one involving the use of a weapon against a former girlfriend. Defendant's risk assessment scores indicate a high risk and high likelihood of reoffending if given the opportunity. In fact, defendant has a pending charge for harassment of a person via electronic means. We agree with the trial court that reporting requirements, GPS monitoring, and other restrictions on defendant's movement or conduct would not be sufficient to ensure the safety of the victim or others. Based on the specific, articulable facts in this case, we affirm the trial

court's decision that there exists no condition or combination of conditions that could mitigate the risk defendant posed to the victim or the community in this case.

¶ 41                                    III. CONCLUSION

¶ 42          For the reasons stated, we affirm the trial court's judgment.

¶ 43          Affirmed.