2026 IL App (4th) 260002

NO. 4-26-0002

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 29, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| TONI R. KELLY, | ) | No. 25CF289 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer Hartmann |
| | ) | Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court, with opinion.
Justices Doherty and DeArmond concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Toni R. Kelly, appeals the circuit court's order denying her pretrial

release under section 110-6.1(a)(1) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS

5/110-6.1(a)(1) (West 2024)). Defendant contends the State failed to prove by clear and

convincing evidence (1) her release poses a real and present threat to the community and (2) no

condition or combination of conditions would mitigate that threat. We agree with defendant's

second argument and reverse and remand with directions.

¶ 2                                I. BACKGROUND

¶ 3        On November 21, 2025, the State charged defendant with five drug-related

offenses after three alleged transactions occurred on October 29, November 5, and November 19,

2025. For each transaction, the State charged defendant with delivery of more than 15 grams but

less than 100 grams of methamphetamine (720 ILCS 646/55(a)(2)(C) (West 2024)). Defendant was also charged with having committed, on November 19, 2025, one count of possession with intent to deliver less than 5 grams of methamphetamine (*id.* § 55(a)(2)(A)) and unlawful possession with intent to deliver alprazolam (720 ILCS 570/401(g) (West 2024)).

¶ 4        That same day, the State filed a verified petition to deny defendant pretrial release under section 110-6.1(a)(1) of the Code (725 ILCS 5/110-6.1(a)(1) (West 2024)). In its petition, the State argued defendant should be detained under the dangerousness standard.

¶ 5        At the November 21, 2025, hearing on the State's petition, the circuit court began by considering probable cause for defendant's arrest. The court initially took judicial notice of the probable-cause hearing of defendant's alleged coconspirator: "[I]nsofar as there is a proffer with regards to probable cause, to begin with, I am taking judicial notice of the probable cause hearing conducted with the codefendant in this case that was conducted just before [defendant's] hearing, in [Livingston County case No.] 25-CF-288." The State next proffered, on November 5, 2025, defendant went alone to a controlled buy where she sold 58.2 grams of methamphetamine to the confidential source in an AutoZone parking lot in Pontiac, Illinois. Defendant originated the text messages with the confidential source during "all four transactions," and defendant contacted the confidential source via text messages and telephone calls. During one of the phone conversations, defendant stated she was delivering methamphetamine in Champaign, Illinois, before driving to Pontiac.

¶ 6        After finding probable cause, the circuit court turned to the State's petition seeking the denial of defendant's pretrial release. The court admitted the pretrial investigation report, which was verified by defendant's sister. According to the pretrial investigation report, defendant, age 25, had resided with a family friend for approximately 5 years in Rossville,

- 2 -

Illinois. Defendant had three children, all of whom had been adopted by immediate family members. She remained in contact with a son who resided in Rossville. Defendant graduated high school and reported her employment status as homemaker. Defendant was currently unemployed, as she was attending counseling, parenting classes, and substance-abuse classes at Addiction Recovery at Carle in Champaign, Illinois. Defendant also helped her mother, who was recovering from surgery, with household chores and other activities.

¶ 7    Defendant's substance-abuse history included using benzodiazepines and methamphetamine. Defendant "last used approximately 1 week ago." At the time of her arrest, defendant was undergoing treatment for substance abuse. Defendant was willing to attend inpatient treatment to get sober.

¶ 8    Defendant had been diagnosed with anxiety, depression, and attention-deficit/hyperactivity disorder, for which she was taking prescribed medication. Defendant attended counseling and substance-abuse services two hours per day, Monday through Friday. About one year before her arrest, defendant was diagnosed with a seizure disorder, and lesions were found on her brain. Defendant met weekly with her doctor, who was working on a course of treatment and medication.

¶ 9    Defendant scored a 5 of 14 on the Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R), indicating a 14.9% failure rate. Defendant had no criminal history. The VPRAI-R given to defendant indicated she was employed at the time of her arrest, which contradicts the pretrial investigation report. This mistake would have added one point to defendant's score but would not have changed the 14.9% failure rate.

¶ 10    The State proffered the same information provided on the issue of probable cause and submitted an outline by the Office of Statewide Pretrial Services (OSPS). According to the

outline, OSPS supervises individuals on pretrial release as ordered by the court. OSPS provides support for defendants including "treatment referrals, transportation assistance, [and] personal care kits." OSPS reports violations to the parties and the courts. OSPS provides GPS monitoring. The OSPS electronic monitoring "program supports any form of GPS as ordered by the court, to include exclusion zones, inclusion zones, home confinement[,] and curfew."

¶ 11        The State further maintained defendant sold 28.6 grams of methamphetamine in the first transaction, 58.2 grams in the second, and 104.8 grams in the third. After one of the transactions, defendant "went and gambled through some of, kind of washed the money that they got from the transaction." As to defendant's threat to the community, the State argued defendant posed a real and present threat to the community, as she was selling large amounts of methamphetamine in Pontiac and in other cities, like Champaign. The State maintained no conditions would mitigate the threat, as defendant initiated the contacts, made the calls, provided directions, and told others she was distributing elsewhere. The State further argued OSPS was limited in its ability to monitor defendant "because it's a self-reporting agency."

¶ 12        Defense counsel reported defendant agreed to abide by any imposed conditions, including reporting, testing, and monitoring. Defendant had completed inpatient treatment and was, at that time, in a recovery program. Defense counsel proffered defendant's denial of the State's allegations and argued OSPS could provide monitoring to a greater extent than indicated on its outline. Counsel proffered defendant's weekly drug testing and her suffering from anxiety, for which she is taking Wellbutrin.

¶ 13        The circuit court found defendant, having committed multiple deliveries totaling over 160 grams of methamphetamine in Pontiac alone, to be a danger to the community. In considering conditions, after calling the amounts sold "insane" and "unheard of," the court cited

*People v. Romine*, 2024 IL App (4th) 240321, and concluded defendant's dangerousness could not be mitigated by any conditions.

¶ 14        On December 3, 2025, defendant filed a motion for relief. Defendant maintained less restrictive conditions would prevent any real and present threat she posed to the community. Defendant alleged she would abide by conditions and OSPS could monitor her by using a GPS ankle monitor. Defendant maintained the court could order more monitoring than the OSPS standards and practice denoted.

¶ 15        On December 17, 2025, a "preliminary hearing" was held. At this hearing, the State called Drew Chase, a detective with the Livingston County Sheriff's Office, who testified he was involved in investigating defendant and Bryce McDaniel. In that investigation, a confidential source was used to conduct a controlled buy on October 29, 2025, in the parking lot of Runnings in Pontiac, Illinois. Defendant sold 28.6 grams of a substance containing methamphetamine for $350. McDaniel was driving the vehicle. A second controlled buy from defendant alone occurred on November 5, 2025, during which 58.2 grams of methamphetamine were sold for $770. This purchase occurred in an AutoZone parking lot in Pontiac. A third controlled buy took place on November 19, 2025. The substance sold contained approximately 104.8 grams of methamphetamine at a price of $1,200. During this transaction, McDaniel drove. On the center console was a Baggie containing 0.4 grams of methamphetamine.

¶ 16        After Detective Chase's testimony, the circuit court found probable cause had been established. The charges against defendant were read. She pleaded not guilty. The court asked if there was any new evidence to offer regarding defendant's detention, to which defense counsel responded he believed a review was scheduled for the following Monday on the motion for relief. The court found continued detention was necessary.

¶ 17 On December 22, 2025, a hearing on the motion for relief was held. Defense counsel noted the circuit court showed concern at the earlier detention hearing over defendant's participation in an outpatient program when she offended. Since that time, counsel and defendant were trying to get defendant into an inpatient treatment at Chestnut Health Systems, and there was a bed open. Defense counsel asked the court to allow defendant to enter inpatient care. Defense counsel proposed upon defendant's release from inpatient treatment, whether having completed the program or whether she chose to leave, defendant would return to jail.

¶ 18 The circuit court stated it could not consider the new evidence regarding inpatient treatment, as it must consider the motion for relief based only on the evidence from the original pretrial detention hearing: "And I believe, my understanding on a motion for relief is that I can only consider the evidence that was previously tendered in connection with the November 21st hearing." After argument, the court denied the motion for relief.

¶ 19 This appeal followed.

¶ 20 II. ANALYSIS

¶ 21 On appeal, defendant asserts two key arguments. Defendant contends the State failed to prove by clear and convincing evidence she posed a real and present safety threat. Defendant further argues the State failed to prove no condition or combination of conditions could mitigate any safety threat.

¶ 22 A. Waiver

¶ 23 The State contends defendant has waived her appellate arguments by filing a motion for relief not in compliance with Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). Rule 604(h)(2) requires the motion for relief to contain "the grounds for such relief" and bars, as waived, "any issue not raised in the motion for relief, other than errors occurring for the

first time at the hearing on the motion for relief." *Id.* The State maintains defendant's motion for relief did not satisfy the rule's requirements, as it "is woefully lacking of any specific identification of error by the court" and lacked adequate citations of the record.

¶ 24    We disagree in part. Defendant has waived her first argument the State failed to prove clearly and convincingly she posed a real and present threat to the safety of a person or persons or the community. At no point in her motion for relief did defendant assert the circuit court erred on this ground. One sentence, quoting *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18, contains the language a charge of a detainable offense is insufficient to show " 'that the defendant poses a threat to public safety.' " However, this excerpt of the quote appears in a paragraph both preceded by the argument conditions would mitigate a real and present threat and the conclusion "[t]here was nothing presented as to the Defendant's background and/or characteristics that would overcome the presumption that the Defendant should be released under pretrial *conditions*." (Emphasis added.)

¶ 25    We disagree with the State's argument defendant did not adequately raise the second argument in her motion for relief. Defendant sufficiently supported her contention with argument, citations of the record, and case law. We will consider it.

¶ 26    We note the State further highlights the record's lack of the transcript of the probable cause hearing for defendant's alleged accomplice. The State, citing *People v. Carter*, 2015 IL 117709, ¶ 19, asserts defendant, as the appellant, has the burden of providing a sufficiently complete record for appellate review and contends any doubt arising from an incomplete record must be construed against defendant (see *People v. Gavin*, 2022 IL App (4th) 200314, ¶ 71).

¶ 27    The incompleteness of the record has no effect on our ruling. The circuit court

expressly took judicial notice of the alleged accomplice's probable-cause hearing for the express purpose of considering probable cause as to defendant. The State, in arguing its petition to deny pretrial release, did not point to any evidence from the accomplice's hearing, and probable cause is not an issue on appeal.

¶ 28                                    B. Standard of Review

¶ 29        In *People v. Morgan*, 2025 IL 130626, ¶ 54, the Illinois Supreme Court settled the dispute between appellate districts over the standard of review to be applied to detention orders under section 110-6.1 of the Code, or so it seemed. The *Morgan* court set forth two separate standards of review, the applicability of which turned on the manner in which the evidence was presented at the pretrial detention hearing:

> "(1) [W]hen live witness testimony is presented at a pretrial detention hearing, the circuit court's ultimate detention decision under section 110-6.1, in addition to any underlying factual findings supporting the decision, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence and (2) when the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *Id.*

¶ 30        Pretrial detention proceedings in the circuit courts are not always so readily defined. For example, here, no live witness testimony was presented at the pretrial detention hearing, but live testimony was presented at a "preliminary hearing" occurring between the

initial detention hearing and the hearing on the motion for relief. Defendant, pointing to the absence of live testimony, contends the *de novo* standard applies. The State, pointing to the fact the circuit court heard live testimony at the December 17, 2025, "preliminary hearing," contends the manifest-weight standard applies. In so arguing, the State admits Detective Drew's testimony is "almost virtually the same as the State's proffer in the original detention hearing."

¶ 31 Despite having heard live testimony at the December 17 "preliminary hearing," the circuit court decided it would consider only the evidence from the initial detention hearing at the hearing on the motion for relief. The court thus did not assess Detective Drew's credibility and weigh that testimony against the statutory factors of the Code in determining defendant's dangerousness. Because the circuit court considered only proffered evidence, we stand "in the same position as the circuit court and may therefore conduct [our] own independent review of the proffered evidence." *Id.* ¶¶ 38, 51. The *de novo* standard of review is appropriate here.

¶ 32 C. Conditions

¶ 33 Turning to defendant's remaining substantive claim, she argues the State offered no compelling evidence she was unlikely to comply with conditions of pretrial release. Emphasizing no criminal history and her willingness to comply with conditions, defendant asserts any threat could be mitigated by home confinement and GPS monitoring.

¶ 34 The State counters by pointing to defendant's lack of employment, the four deliveries in Pontiac and Champaign involving nearly 200 grams of methamphetamine, the use of drugs the week before her arrest, the fact she had an accomplice, and the fact she drove despite having been diagnosed with seizure disorder. The State, citing *Romine*, 2024 IL App (4th) 240321, ¶ 20, argues like in *Romine* the nature and circumstances of the charged offense, in consideration with the threat posed, were sufficient to support the finding no condition or

combination of conditions would mitigate the threat defendant's release poses.

¶ 35    The Code presumes all criminal defendants are entitled to pretrial release subject to conditions. See 725 ILCS 5/110-2(a) (West 2024). To overcome that presumption and obtain the pretrial detention of a defendant on the basis the defendant is dangerous, the State must prove by clear and convincing evidence, in part, "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" (*id.* § 110-6.1(e)(2)) and "no condition or combination of conditions *** can mitigate *** the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" (*id.* § 110-6.1(e)(3)(i)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question ***." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74. A court of review will find the denial of a defendant's pretrial release unlawful if the State fails to meet its burden on any one of the elements of section 110-6.1(e). See *People v. Thomas*, 2025 IL App (4th) 251082-U, ¶ 30 (citing *People v. Sorrentino*, 2024 IL App (1st) 232363, ¶ 32).

¶ 36    The questions of whether a criminal defendant poses a threat sufficient to deny pretrial release and whether a condition or conditions can mitigate that threat "are two sides of the same coin." *Romine*, 2024 IL App (4th) 240321, ¶ 16. "[T]he nature and severity of the threat necessarily determine the nature and severity of the conditions that could—or could not— mitigate the threat." *Id.* Because of this, we turn to the factors of section 110-6.1(g) of the Code (725 ILCS 5/110-6.1(g) (West 2024)).

¶ 37    Section 110-6.1(g) lists factors for a circuit court to consider in weighing the question of whether a criminal defendant presents a real and present threat. *Id.* A defendant's dangerousness must "be individualized," and "no single factor or standard may be used

exclusively to order detention." *Id.* § 110-6.1(f)(7). The statutory factors of section 110-6.1(g) are as follows:

"(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.

(2) The history and characteristics of the defendant including:

(A) Any evidence of the defendant's prior criminal history indicative of violent, abusive or assaultive behavior, or lack of such behavior. \*\*\*

(B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have

access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release or other release from custody pending trial ***.

(9) Any other factors *** deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." *Id.* § 110-6.1(g).

¶ 38 Consideration of these factors reveals defendant is involved in the distribution of controlled substances into the community, which causes "damage to the peace, health, and welfare" of the community. See 720 ILCS 570/100 (West 2024). There is, however, no evidence of defendant's noncompliance with court orders and no evidence of violent, assaultive, or abusive behavior. The State has not shown defendant had or had access to a weapon. There is no evidence defendant committed drug transactions from her home. While there is evidence defendant has three children who were adopted by family members, the State proffered no facts regarding the circumstances of those adoptions, such as whether the Illinois Department of Children and Family Services was involved or whether defendant failed to comply with court orders. On the record before us, we find the State's evidence leaves a reasonable doubt that no condition or combination of conditions could mitigate the threat defendant poses. See *Chaudhary*, 2023 IL 127712, ¶ 74 ("Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question ***."). The State has thus not overcome the presumption defendant's threat to the community could be

mitigated with conditions, such as home confinement and GPS monitoring.

¶ 39 This case is not similar to *Romine*. In *Romine*, this court held "the evidence of a defendant's charged conduct, even if it took place on a single occasion, may reflect such a departure from the basic expectations of civil society that it becomes difficult to predict the defendant's compliance with court orders *** if the defendant is placed on pretrial release." *Romine*, 2024 IL App (4th) 240321, ¶ 20. *Romine* involved a defendant who shot his mother, abandoned her body, told police she was alive, attempted to destroy his cell phone and elude police, threw a loaded AR-type rifle from his car, and placed blame for the murder on another. *Id.* ¶¶ 5-7. Three transactions involving the same drug and the same confidential source and a possible fourth in another town, without an interrupting arrest do not, as in *Romine*, "reflect such a departure from the basic expectations of civil society that it becomes difficult to predict the defendant's compliance with court orders." *Id.* ¶ 20.

¶ 40 A final factor weighing in favor of defendant's release on appropriate conditions is the availability of an inpatient treatment option for her addiction. At the hearing on the motion for relief, defendant's attorney advised the court that a bed had opened for defendant at an inpatient treatment facility. Releasing defendant on condition of enrollment in the outpatient treatment program would provide additional confidence that she would be unlikely to reoffend while on pretrial release.

¶ 41 The circuit court ruled that the new information concerning the availability of inpatient treatment could not be considered in hearing the motion for relief. This is understandable, given that the First District held in *People v. Williams*, 2024 IL App (1st) 241013, ¶ 28, that "new evidence and proffers" cannot be considered at the hearing on a motion for relief; because there was no contrary authority from this district, the circuit court here was

obligated to follow *Williams.* See *People v. Harris*, 123 Ill. 2d 113, 128 (1988) (holding that, absent a contrary ruling from within the circuit court's appellate district, appellate court decisions are binding precedent regardless of locale).

¶ 42    In our view, *Williams* was wrongly decided.

¶ 43    The motion for relief is designed to "follow the same process applicable to bond appeals" prior to the abolition of cash bail. Ill. S. Ct. Pretrial Release Appeals Task Force, Report and Recommendations 5 (2024), https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/628434e3-d07f-4ead-b1f6-4470d7e83bf3/Pretrial%20Release%20 Appeals%20Task%20Force%20Report_March%202024.pdf [https://perma.cc/PBQ3-4WPN]. Appeals of bond orders required as "a prerequisite to appeal" that the defendant file a "written motion for the relief to be sought on appeal." Ill. S. Ct. R. 604(c)(1) (eff. Apr. 15, 2024) (governing appeals from bond orders made prior to the repeal of cash bail). There is no history of courts being prohibited from considering new information in deciding such a motion. See, *e.g.*, *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 8 (trial court considered " 'mitigating circumstances' " that had been learned " 'since bond was set' ").

¶ 44    We find it telling that the supreme court could have, but did not, label the Rule 604(h) motion as one for *reconsideration* of a prior ruling. Instead, like the bond motion under Rule 604(c), it seeks *relief* from the defendant's current status of being detained (or, in the case of a State motion, a change from the defendant's release). Where a defendant is detained, that detention is "the cumulative result of evidence heard or information learned at every detention hearing." *People v. Fuller*, 2026 IL App (4th) 251329, ¶ 36. We see no reason why the hearing on the motion for relief—which is itself a hearing at which the court determines whether the defendant's detention status should continue or be changed—cannot also be a place at which

information relevant to the detention decision might be received.

¶ 45    Additionally, Rule 604(h)(2) provides that "any issue not raised in the motion for relief, *other than errors occurring for the first time at the hearing on the motion for relief*, shall be deemed waived" on appeal. (Emphasis added.) Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). In our view, this recognition that a *new* error might occur at the hearing on the motion for relief implicitly supports the notion that new information might well be considered there.

¶ 46    Finally, Rule 604(h)(2) should be read in conjunction with the statutory requirement that the circuit court must find the necessity for continued detention at "each subsequent appearance of the defendant before the court." 725 ILCS 5/110-6.1(i-5) (West 2024). Simply put, the hearing on a motion for relief *is* a subsequent appearance of the defendant before the court. It is well understood that new information can be received at the time of a subsequent detention review. See, *e.g.*, *People v. Walton*, 2024 IL App (4th) 240541, ¶ 29 (discussing the necessity for new information or a change in circumstances at a detention review hearing).

¶ 47    Consequently, it is appropriate for us to consider the availability of an inpatient treatment option in deciding that the trial court erred in denying defendant her pretrial release.

¶ 48                                III. CONCLUSION

¶ 49    We reverse the circuit court's judgment and remand this case for a determination of the appropriate conditions of release as contemplated by sections 110-5(c) and 110-10(b) of the Code (725 ILCS 5/110-5(c), 110-10(b) (West 2024)).

¶ 50    Reversed and remanded with directions.

***People v. Kelly*, 2026 IL App (4th) 260002**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Livingston County, No. 25-CF-289; the Hon. Jennifer Hartmann Bauknecht, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Carolyn R. Klarquist, and Bryon M. Reina, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |