NOTICE
Decision filed 05/27/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 260157-U

NO. 5-26-0157

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 26-CF-48 |
| | ) | |
| JASMINE L. FARNY, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BOLLINGER delivered the judgment of the court.
Justices Barberis and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motion for relief are affirmed.

¶ 2    Defendant, Jasmine L. Farny, appeals the Jefferson County trial court's February 11, 2026, order granting the State's petition to deny pretrial release and the February 19, 2026, order denying her motion for relief. For the following reasons, we affirm.

¶ 3                              I. BACKGROUND

¶ 4    On February 3, 2026, defendant was charged with first degree murder in that, without lawful justification and with the intent to kill James D. Cross, she shot him with a firearm and caused his death. 720 ILCS 5/9-1(a)(1) (West 2024). The State filed a verified petition to deny defendant pretrial release the same day, alleging that the defendant was charged with a qualifying

1

offense, being first degree murder, and posed a real and present threat to the safety of any person or persons or the community. 725 ILCS 5/110-6.1(a)(1.5) (West 2024). Upon a motion from defendant and without objection by the State, the hearing on the petition was set for February 11, 2026.

¶ 5    The matter proceeded to a hearing, and the State proffered the following information. Captain Mellot of the Jefferson County Sheriff's Office (JCSO) would testify that on February 1, 2026, he was dispatched to East Bethel Road in Belle Rive, Illinois, to a gravel parking lot known locally as "the dice." When Mellot arrived, he observed a white male lying face down near the rear bumper of a white GMC truck. The victim was covered in blood and appeared deceased. There were three .380 caliber pistol shells located near the body, but no firearm was recovered from the scene. The victim was later identified as James Cross.

¶ 6    The State further proffered that Sarah Kaufman would testify that on January 31, 2026, between 4:30 and 4:45 p.m., she passed the dice parking lot and observed a white GMC truck and a gray truck with "a very unique decal" covering the entire rear windshield. The gray truck appeared to be lifted and had unique tires.

¶ 7    Hunter DeJournett would testify that when he passed through the area on January 31, 2026, between 4:30 and 4:45 p.m., he passed a gray truck driving fast and recklessly. The truck was lifted with aftermarket tires and had a single female occupant driving it. He saw a white GMC truck in the dice parking lot, and saw it there again later in the evening.

¶ 8    Detective Justin Titzer of the JCSO would testify that as he began his investigation, information developed that defendant was the "on-again-off-again girlfriend of James Cross." Titzer spoke with defendant, and she first stated that she had not spoken to Cross in months. She later admitted that she had spoken to him as recently as two days ago. She showed Titzer her

2

phone, but it appeared that messages had been deleted. She consented to a forensic analysis of her phone. Titzer obtained and executed a search warrant for defendant's phone. There were text messages of note taken from the phone, showing that defendant messaged Cross on January 31, 2026, stating, "Could you meet me at the dice around 7 p.m.?" Cross responded, "What about? Sounds kind of f**ked up." Defendant responded, "Not saying over f**king phone. Will you or not? It's a yes or no." Cross replied that he would.

¶ 9    After reviewing the messages, Titzer conducted a formal interview of defendant. She initially denied being at the dice parking lot, but later admitted that she was "in the area" and that she sent the messages to Cross, but she "never showed." Sometime later she also admitted during the interview that she did actually arrive at the dice parking lot to meet Cross. Defendant "initially claimed that [Cross] attacked her. She fought him off and shot and killed him with a gun that he possessed and brought to the scene." Defendant stated that she took the firearm from Cross's waistband, shot him, took his phone, threw it "on the side of the road," and dumped the firearm in the country. Even later, and still during the interview, defendant admitted that she took her father's .380 firearm from his safe and went to meet Cross at the dice to "take his cell phone." Defendant said Cross "became upset and grabbed her so she shot him" with the firearm she brought.

¶ 10    Titzer would further testify that a search warrant was executed at Cross's home, and his .380 firearm was located at his home. A search warrant was also executed at the home of defendant. Her father said that he owned two .380 firearms, but one was missing during the search. Defendant later admitted that she took her father's firearm and buried it at the Bethel Cemetery. She took officers to locate the firearm.

¶ 11    The State then proceeded with its argument. The State asserted that there was a high likelihood of success at trial, and no combination of conditions would ensure defendant's presence

3

in court, highlighting that she was a flight risk. The State said that defendant set a meeting up with Cross in a secluded area, was armed with a firearm, and "lied about absolutely everything." The State said that Cross was not armed, and his firearm was later discovered at his home. Defendant buried the firearm she used, which her father later identified as the one missing from his home. Defendant set up the meeting, deleted the messages, disposed of Cross's phone, and buried the murder weapon. The State asked that defendant be detained pending trial.

¶ 12    Defense counsel proceeded by proffer, stating that defendant was 31 years old and lived with her parents in Dahlgren, Illinois. She had family ties to the area and graduated from high school in 2013. She had a four-year-old daughter who died from brain cancer in 2021. Defendant was on conditional discharge in Hamilton County for misdemeanor retail theft, but had no felonies. She was not prescribed medication, had no mental illness diagnoses, had no addiction issues, nor was she undergoing treatment for any addiction or mental illness.

¶ 13    Defense counsel stated that there would be "plenty of evidence to show that Mr. Cross was both physically and mentally abusive to [defendant] by several witnesses." Cross carried a gun on a regular basis and was a member of a motorcycle gang. Defense counsel described him as a "very large, intimidating man" whom the defendant was afraid of. Defendant had serious bruising on her ribs and legs and a bruise developing on her arm from the night of the incident, and she would assert a self-defense claim at trial.

¶ 14    Defense counsel argued that defendant did not present a real and present threat to anyone, nor did she have a criminal history suggesting she was a threat. She was extensively abused "by a man who tried to play her emotions by saying he had cancer after her child died from brain cancer." Cross manipulated the defendant, and she was "not a threat, obviously, to him anymore because

4

he's deceased." She was also not a threat to the public at large. Further, electronic monitoring at her father's house would be a sufficient condition.

¶ 15 The State responded, arguing that, as to the self-defense claim, defendant set up a meeting with Cross in a secluded area. There was no history of any orders of protection or police reports involving the parties. Defendant showed up to the scene with a firearm and Cross was shot twice. The State said, "That isn't indicative of someone scared of anyone. That's someone who went there with a purpose, and I think the evidence will bear that out at trial."

¶ 16 The trial court provided detailed oral findings, first stating that this was a qualifying offense and that the State alleged that defendant posed a real and present threat to the community at large. In defendant's favor, as to the real and present threat, based on the pretrial services investigation report, defendant was young, had ties to the community, and had family support present at the hearing. She was a high school graduate and had a "very slim, light criminal history" including a DUI, which resulted in court supervision and retail theft, which resulted in conditional discharge, which was in force at the time of the offense. She had no felony convictions, received a level two on the Viriginia Pretrial Risk Assessment Instrument, and reported no drug, alcohol, or mental health issues. The trial court stated that it was of concern that defendant was on conditional discharge at the time of the offense, and one of the conditions was not to violate the law. Defendant was also unemployed.

¶ 17 The trial court recognized the defendant's intent to assert a self-defense argument, but it had not "seen much here in these proffers to indicate to [the court] that there would be much basis for that at this point." Defendant arranged the meeting with Cross, whom she was supposedly afraid of, and took a firearm to the meeting. Cross was unarmed and then shot three times, which indicated to the court that "whoever shot him meant to kill him." After being confronted by the

police, defendant repeatedly lied to them and changed the story, as well as hiding the evidence. The trial court said that based on the facts presented, it appeared that defendant planned Cross's murder and tried "very hard to get away with it by lying to the police" about an argument between the parties and how the firearm was obtained. There was no evidence of orders of protection or any criminal history against Cross at the time of the offense. The trial court found that defendant posed a real and present threat to the safety of the public. The trial court entered a docket entry granting the State's petition to detain.

¶ 18    Defendant filed a motion for relief and immediate release on February 19, 2026. The motion asserted that the trial court erred in granting the State's petition to deny pretrial release in that the State failed to meet its burden of proving by clear and convincing evidence that the proof was great that defendant committed the offense, was a threat to specific persons or the community, and that no condition or combination of condition would reasonably mitigate defendant's threat. Specifically, the trial court failed to consider defendant's willingness to abide by any terms of pretrial release, her lack of criminal history, and her lack of propensity or reputation for violent, abusive, or assaultive behavior. Further, the trial court erred in giving weight to the State's proffer that defendant arranged the meeting, hid the weapon, and lied to the police while not giving any weight to defendant's proffer of self-defense. The trial court also erred in deciding that defendant would not abide by court orders because she was on conditional discharge.

¶ 19    The matter proceeded to a hearing on the motion the same day. Defense counsel recited the factors the trial court relied upon to determine defendant's real and present threat, as discussed above. Defense counsel stated that the trial court failed to consider that defendant could reside with her parents on home confinement. Defendant's parents also stated that there would not be any firearms in the home if the defendant resided there. Defense counsel also argued that the trial court

6

had found defendant's criminal history was a "good thing", and that it also considered it a "bad thing" because she had no criminal history. Defendant had no history of violence, and the "person to who she was a threat is now deceased, and there's no reason to believe that she is a threat to the community." Defense counsel argued that the trial court took consideration of the State's proffer, but not defendant's proffer that she acted in self-defense. The trial court stated there was not much evidence presented as to self-defense, and defense counsel stated that there was a history of mental and verbal abuse by Cross to defendant. Defense counsel stated that defendant was not a danger to anyone, and conditions could be imposed to ensure that she appears for court and is monitored.

¶ 20    The State proceeded, recalling the proffer presented at the initial hearing, asserting that the self-defense claim would be rebutted at trial. Further, there was a "large flight risk" with someone facing a mandatory prison sentence. The State asked for the motion to be denied. Defense counsel responded, stating that defendant had bruising on her body as proof of self-defense. Further, nothing was presented that would suggest defendant was a flight risk. Defense counsel agreed with the trial court that it did not previously find defendant to be a flight risk.

¶ 21    The trial court recalled the facts of the offense, stating that the facts of the offense gave the trial court "pause about what that person may be capable of doing if they're not in custody." The trial court denied the motion for relief. Defendant appealed.

¶ 22                              II. ANALYSIS

¶ 23    On appeal, defendant argues that the State failed to prove that she posed a real and present threat to the safety of the community that could not be mitigated by conditions. Defendant does not challenge the finding that the State proved, by clear and convincing evidence, that the proof is evident or the presumption is great that defendant committed a qualifying offense. This issue has thus been abandoned on appeal. See *People v. Drew*, 2024 IL App (5th) 240697, ¶ 21; Ill. S. Ct.

7

R. 604(h)(7) (eff. Apr. 15, 2024) ("If a memorandum is filed, it must identify which issues from the motion for relief are being advanced on appeal.").

¶ 24    While not addressed by either party on appeal, the trial court failed to include a separate written order on appeal as required by the Code of Criminal Procedure of 1963 (Code). 725 ILCS 5/110-6.1(h) (West 2024). Under the Code, trial courts "shall, in any order for detention: *** make a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release." *Id.* However, as we found in *People v. Morrissey*, 2024 IL App (5th) 231297-U, ¶¶ 9-10, the written docket entry may be viewed in conjunction with its oral pronouncements to sufficiently comply with the requirement to provide written findings. Due to the extensive oral pronouncements provided by the trial court, taken in conjunction with the docket entry granting the State's petition, we find this to be sufficient. We now turn to the arguments on appeal.

¶ 25    Our standard of review of pretrial release determinations is dependent on whether the trial court heard live witness testimony or whether the parties proceeded solely by proffer or submission of documentary evidence. Where the parties to a pretrial detention hearing proceed solely by proffer or submission of documentary evidence, this court stands in the same position as the circuit court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. Because the parties proceeded solely by proffer, our review is *de novo*.

¶ 26                              A. Real and Present Threat

¶ 27    Pretrial release is governed by article 110 of the Code, as amended by Public Act 101-652 (eff. Jan. 1, 2023), sometimes referred to as the Pretrial Fairness Act. Under article 110 of the

8

Code, a defendant's pretrial release may only be denied in certain limited situations. See 725 ILCS 5/110-2(a), 110-6.1 (West 2024). If the State files a petition requesting denial of pretrial release,

> "[T]he State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that a defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of [another] person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution." *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 7. See 725 ILCS 5/110-6.1(e), (f) (West 2024).

Our supreme court has instructed that "[e]vidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74; *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12.

¶ 28    Defendant argues that nothing in the State's argument or proffer suggested that she posed a threat to anyone other than Cross, who is now deceased, and as such failed to prove that she posed a risk to the community. Defendant argues that she acted in self-defense, which could be proven by the bruising on her body and her abusive relationship with Cross. Further, defendant's act "was specific to Cross and unlikely to be repeated." She had a limited criminal background and no violent offenses.

¶ 29    The court is provided a nonexhaustive list of factors it should consider when determining whether a defendant poses a real and present threat to the safety of any individual(s) or the community. These include the following:

"(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.

(2) The history and characteristics of the defendant including:

(A) Any evidence of the defendant's prior criminal history indicative of violent, abusive, or assaultive behavior, or lack of such behavior. Such evidence may include testimony or documents received in juvenile proceedings, criminal, quasi-criminal, civil commitment, domestic relations or other proceedings.

(B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release, or other release from custody pending trial, sentencing, appeal, or completion of sentence for an offense under federal or State law.

(9) Any other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for

10

violent, abusive, or assaultive behavior, or lack of such behavior." 725 ILCS 5/110-6.1(g)(1)-(9) (West 2024).

No one factor is determinative, and the court must base its decision on an individualized assessment. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 15 (citing 725 ILCS 5/110-6.1(f)(7) (West 2022)).

¶ 30    We have conducted our own independent review of the proffered evidence and the relevant factors. First, the nature and circumstances of the offenses charged against defendant involve a crime of violence and the use of a weapon. 725 ILCS 5/110-6.1(g)(1) (West 2024). While the nature and circumstances of the offense is only one element, it is extremely important in this case. Defendant was charged with first degree murder due to the death of Cross by a firearm. Defendant messaged Cross to set up a meeting in a secluded area, did not tell him what the meeting was about, brought a firearm to the scene, and shot Cross. The court is permitted to consider the nature and circumstances charged against defendant; however, this is not the only factor we find to be relevant to defendant's real and present threat.

¶ 31    Defendant also admitted to shooting Cross, which can be considered under any statements made by defendant. *Id.* § 110-6.1(g)(4). Defendant initially told law enforcement that she had not seen him in months, but then asserted that she was "in the area" and met with Cross. She stated he brought a firearm to the scene and after an argument, she used his firearm to shoot him in self-defense. She later amended her statement, admitting that she brought her father's firearm to the scene and used it to shoot Cross before hiding the firearm. Defendant's access to this firearm may also be considered under the Code. *Id.* § 110-6.1(g)(7). Defendant's father did not know she took the firearm and it was later discovered buried in a cemetery. Defendant was additionally on conditional discharge for a retail theft case at the time of the offense. *Id.* § 110-6.1(g)(8).

11

¶ 32    While defendant no longer posed a threat to Cross as he is deceased, her actions and the factors presented show that she poses a risk to the community. Defendant set up a meeting with Cross, brought a firearm she took from her father without his knowledge, shot Cross, then hid the evidence of the messages and firearm. Defendant argues that these actions only posed a risk to Cross, but her actions may be considered as a whole to her risk to the community as well.

¶ 33    Defendant argues that she acted in self-defense and will present an argument at trial to prove as much. While we may consider defendant's proffer that she acted in self-defense due to bruising on her body, "[t]he court [is] not required to accept [the] defendant's contention that [she] acted in self-defense when the record permitted other conclusions concerning [her] culpability and, by extension, [her] potential dangerousness." *People v. Romine*, 2024 IL App (4th) 240321, ¶ 21. Cross was unarmed and his weapon was located at his home, not at the scene. Defendant did not proffer additional evidence to state how she acted in self-defense other than to describe an "on-again-off-again" abusive relationship and bruising on her body. The record provides clear and convincing evidence that the victim was unarmed and that defendant had no grounds to reasonably believe that the victim threatened defendant with death, great bodily harm, or a forcible felony. 720 ILCS 5/7-1(a) (West 2024) (One is " justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony."). Defendant did not alert law enforcement that she had to act in self-defense, actively attempted to hide evidence, and provided false statements to law enforcement before admitting to the facts of the offense. Similarly to *Romine*, the "[d]efendant's actions are not consistent with an innocent mistake or genuine remorse but a concerted refusal to accept responsibility for conduct [she] knew was wrong." *Romine*, 2024 IL App (4th) 240321, ¶ 23. Considering all the factors

12

presented, this court agrees with the trial court, that based on the specific articulable facts and the Code's factors, defendant poses a real and present threat to the community.

¶ 34                                    B. Conditions

¶ 35    Once a court determines that defendant poses a threat to the safety of any individual or the community, the trial court must determine whether the State has met its burden of proving by clear and convincing evidence what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a) (West 2024). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against defendant; (3) the history and characteristics of the person;[1] (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. 725 ILCS 5/110-5(a) (West 2024). The Code lists no singular factor as dispositive. See 725 ILCS 5/110-5(a) (West 2024). The nature and circumstances of the underlying offense is "just one factor to consider in determining whether the threat posed can be mitigated by conditions of release." *People v. Lopez*, 2025 IL App (2d) 240709, ¶ 19.

¶ 36    As we are employing *de novo* review, we will apply these same factors to the evidence proffered. We find the following factors support the conclusion that no condition or combination

---

[1]Defendant's history and characteristics include: "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A), (B) (West 2024).

13

of conditions could mitigate the real and present threat posed by defendant. First, the nature and circumstances of the offenses charged. Defendant was charged with first degree murder, a detainable offense, that involved violence and the use of a weapon. 725 ILCS 5/110-5(a)(1) (West 2024). Next, the weight of the evidence against defendant included a proffer from the State of the police report. Within the report, defendant admitted to shooting Cross. *Id.* § 110-5(a)(2). Defendant was also on conditional discharge for a retail theft case. *Id.* § 110-5(a)(3). Finally, defendant poses a risk of obstructing or attempting to obstruct the criminal justice process as she already willingly hid evidence and lied to law enforcement through the investigation. *Id.* § 110-5(a)(5).

¶ 37     While defendant argues that she could reside with her parents on electronic home monitoring and all firearms would be removed, that home is where she resided previously and removed a firearm without her father's knowledge. This would not be a sufficient condition to mitigate her risk. Accordingly, based on our independent review, we agree with the trial court that no condition or combination of conditions would mitigate the threat posed by defendant.

¶ 38                              III. CONCLUSION

¶ 39     Based on the foregoing reasons, we affirm the trial court's orders of February 11, 2026, and February 19, 2026.

¶ 40     Affirmed.